THE OVERLAKES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 91875. Filed January 16, 1964.

*Elden McFarland* and *George A. Donohue*, for the petitioner.
*John E. McDermott, Jr.*, for the respondent.

506

510

**OPINION**

BLACK, *Judge:* Petitioner manufactured and sold Signal Corps field wire to a contracting agency of the Federal Government under two contracts, both of which were subject to price redeterminations with the contracting agency. Under the first contract, No. 8375,

deliveries were made in 1951 and 1952 and proceeds were accrued in 1951 and 1952 by Overlakes. Deliveries under the second contract, No. 2704, were made in 1952 and 1953 and proceeds were also accrued by Overlakes in those years, the taxpayer being on the accrual system of accounting.

The price of wire under both contracts was later adjusted downward and the adjustments took place in 1954 with respect to contract No. 8375 and in 1955 with respect to contract No. 2704.

Overlakes refunded $475,612.17 to the contracting agency in 1954 with respect to income accrued on its books in 1951 and 1952 under contract No. 8375, simply by deducting that amount from amounts due to Overlakes by the same contracting agency on unrelated contracts. In 1955, petitioner made a refund of $312,773.85 by the same process which represented amounts accrued by Overlakes in 1952 and 1953 under contract No. 2704.

With respect to Overlakes' tax returns for 1952 and 1953, the petitioner attempted to anticipate the refunds and it set up reserve accounts and claimed deductions. The deduction for each year was called "Provision for Recapture of Excess Profits on Government Contracts." Petitioner deducted $750,000 on its Schedule J "Other Deductions" in its 1952 tax return and placed this amount in a reserve account. In 1953 it deducted $50,000 in the same manner and placed this amount in the reserve account; we do not have the year 1953 before us. In the notice of deficiency for 1952, which is the only year before us, the respondent disallowed the deduction of $750,000 with the following explanation:

(c) It has been determined that the sum of $750,000.00 claimed as a deduction on line 30, page 1, of the Federal income tax return filed, and explained in Schedule J attached to the return as a "Provision for Recapture of Excess Profits on Government Contracts," is not allowable under any provision of the Internal Revenue Code of 1939.

## Issue 1

The first issue before us is whether or not petitioner is entitled to take a deduction of $750,000 as a provision for recapture of excess profits on Government contracts.

As a general rule, a liability or an expense is deductible in the taxable year in which all the events have occurred which determine the fact of the liability and the amount of the liability can be determined with reasonable accuracy.[1] Where the liability is contingent and not fixed

---

[1] Internal Revenue Code of 1939.
SEC. 43. PERIOD FOR WHICH DEDUCTIONS AND CREDITS TAKEN.
The deductions and credits (other than the corporation dividends paid credit provided in section 27) provided for in this chapter shall be taken for the taxable year in which "paid or accrued" or "paid or incurred," dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. * * *

it cannot be deducted. The parties are not in disagreement with these general statements of law, *Brown* v. *Helvering*, 291 U.S. 193 (1934), and *United States* v. *Anderson*, 269 U.S. 422 (1926), which cases still represent the present law on this matter [2] as well as that under the 1939 Code, which Code is applicable to this case.

It is petitioner's position, however, that the additions to the reserve of $750,000 in 1952 and $50,000 in 1953 were within 2 percent of the actual net amount of the renegotiation refunds and that by the end of 1952 it was definitely known that substantial excessive profits had been accrued under the contracts. In other words, petitioner contends that the liability for repayment under the contracts was not contingent in 1952 but had already become a fixed liability in that year. We cannot agree with this conclusion. There was no legally enforceable claim against petitioner for any refund in 1952 or, for that matter, in 1953. The audits necessary for a redetermination of the contract price were not completed until 1954 on contract No. 8375 and 1955 on contract No. 2704. Until there was a final determination by the contracting agency there was no claim against petitioner; the claims were still contingent.

This is not a case where petitioner was making annual additions to a reserve account based on a prior history of past experience with contingencies such as in the case of a bad debt reserve. On the contrary, we have before us a situation where petitioner was attempting to anticipate a price adjustment under a Government contract which was subject to a price redetermination under the Armed Services Procurement Act. That Act, in conjunction with the provisions in the 1939 Code as will be discussed hereinafter, provides for a specific method of relief for handling refunds under Government contracts such as we have here and we do not believe that petitioner is entitled to depart from that scheme and attempt to handle the adjustments by claiming a deduction for a reserve for the recapture of excessive profits on Government contracts.

We hold that petitioner's accrual of a reserve of $750,000 in 1952 as a "Provision for Recapture of Excess Profits on Government Contracts" is not sustained.

## *Issue 2*

Petitioner contends, in the alternative, in the event that we determine it is not entitled to the deduction described above that section

---

[2] Internal Revenue Code of 1954.
SEC. 461. GENERAL RULE FOR TAXABLE YEAR OF DEDUCTION.

(a) GENERAL RULE.—The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income.

3806 of the 1939 Code [3] provides for the reduction of gross income in

---

[3] SEC. 3806.  MITIGATION OF EFFECT OF RENEGOTIATION OF WAR CONTRACTS OR DISALLOWANCE OF REIMBURSEMENT.

(a) REDUCTION FOR PRIOR TAXABLE YEAR.—

(1) EXCESSIVE PROFITS ELIMINATED FOR PRIOR TAXABLE YEAR.—In the case of a contract with the United States or any agency thereof, or any subcontract thereunder, which is made by the taxpayer, if a renegotiation is made in respect of such contract or subcontract and an amount of excessive profits received or accrued under such contract or subcontract for a taxable year (hereinafter referred to as "prior taxable year") is eliminated and, in a taxable year ending after December 31, 1941, the taxpayer is required to pay or repay to the United States or any agency thereof the amount of excessive profits eliminated or the amount of excessive profits eliminated is applied as an offset against other amounts due the taxpayer, the part of the contract or subcontract price which was received or was accrued for the prior taxable year shall be reduced by the amount of excessive profits eliminated.  For the purposes of this section—

(A) The term "renegotiation" includes any transaction which is a renegotiation within the meaning of the Federal renegotiation act applicable to such transaction, any modification of one or more contracts with the United States or any agency thereof, and any agreement with the United States or any agency thereof in respect of one or more such contracts or subcontracts thereunder.

(B) The term "excessive profits" includes any amount which constitutes excessive profits within the meaning assigned to such term by the applicable Federal renegotiation act, any part of the contract price of a contract with the United States or any agency thereof, any part of the subcontract price of a subcontract under such a contract, and any profits derived from one or more such contracts or subcontracts.

\*          \*          \*          \*          \*          \*          \*

(D) The term "Federal renegotiation act" includes section 403 of the Sixth Supplemental National Defense Appropriation Act (Public 528, 77th Cong., 2d Sess.), as amended or supplemented, the Renegotiation Act of 1948, as amended or supplemented, and the Renegotiation Act of 1951, as amended or supplemented.

\*          \*          \*          \*          \*          \*          \*

(3) DEDUCTION DISALLOWED.—The amount of the payment, repayment, or offset described in paragraph (1) or paragraph (2) shall not constitute a deduction for the year in which paid or incurred.

(4) EXCEPTION.—The foregoing provisions of this subsection shall not apply in respect of any contract if the taxpayer shows to the satisfaction of the Commissioner that a different method of accounting for the amount of the payment, repayment, or disallowance clearly reflects income, and in such case the payment, repayment, or disallowance shall be accounted for with respect to the taxable year provided for under such method, which for the purposes of subsections (b) and (c) shall be considered a prior taxable year.

(b) CREDIT AGAINST REPAYMENT ON ACCOUNT OF RENEGOTIATION OR ALLOWANCE.—

(1) GENERAL RULE.—There shall be credited against the amount of excessive profits eliminated the amount by which the tax for the prior taxable year under Chapter 1, Chapter 2A, Chapter 2B, Chapter 2D, and Chapter 2E, is decreased by reason of the application of paragraph (1) of subsection (a) ; and there shall be credited against the amount disallowed the amount by which the tax for the prior taxable year under Chapter 1, Chapter 2A, Chapter 2B, Chapter 2D, and Chapter 2E, is decreased by reason of the application of paragraph (2) of subsection (a).

\*          \*          \*          \*          \*          \*          \*

(3) CREDIT FOR BARRED YEAR.—If at the time of the payment, repayment, or offset described in paragraph (1) or paragraph (2) of subsection (a), refund or credit of tax under Chapter 1, Chapter 2A, Chapter 2B, Chapter 2D, or Chapter 2E, for the prior taxable year, is prevented (except for the provisions of section 3801) by any provision of the internal-revenue laws other than section 3761, or by rule of law, the amount by which the tax for such year under such chapters is decreased by the application of paragraph (1) or paragraph (2) of subsection (a) shall be computed under this paragraph.  There shall first be ascertained the tax previously determined for the prior taxable year.  The amount of the tax previously determined shall be the excess of—

(1) the sum of (A) the amount shown as the tax by the taxpayer upon his return (determined as provided in section 271(b)(1) and (3)), if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B)

1952, the year petitioner alleges the "excessive profits"[4] were earned so far as contract No. 8375 is concerned. We cannot agree with this contention since that section provides for a tax credit computation as a measure of relief and not a deduction from gross income.

Section 3806 was added to the 1939 Code in 1942 to effectuate into law the Commissioner's Rev. Rul., I.T. 3577, 1942–2 C.B. 163. *Fleet Carrier Corporation*, 37 T.C. 527, 535 (1961). The immediate problems which gave rise to the enactment of section 3806 resulted from the Renegotiation Act of 1942, 56 Stat. 245, 50 U.S.C. App. 1191. However, section 3806 is also applicable to renegotiations under the Armed Services Procurement Act of 1947. The technique employed in section 3806 provides for the computation of a tax credit. No deduction is to be made in either the year the amount is actually refunded, section 3806(a)(3), or in the prior taxable year in which the amount was originally included in taxable income, section 3806 (a)(1). The tax credit is determined by computing the tax for the year of accrual with the refunded sales proceeds included in the gross income and computing the tax for such year without such refunded proceeds included in gross income. The difference between the tax as thus computed is the amount of the tax credit to be allowed. The statutory scheme embodied in section 3806 normally makes it unnecessary to open up the prior year since the tax credit is applicable to the contract refund and used as an offset against the contract refund in the year of repayment. In *Standard Roofing & Material Co.* v.

---

the amounts previously assessed (or collected without assessment) as a deficiency, over—

(2) the amount of rebates, as defined in section 271(b)(2), made.

There shall then be ascertained the decrease in tax previously determined which results solely from the application of paragraph (1) or paragraph (2) of subsection (a) to the prior taxable year. The amount so ascertained, together with any amounts collected as additions to the tax or interest, as a result of paragraph (1), or paragraph (2) of subsection (a) not having been applied to the prior taxable year shall be the amount by which such tax is decreased.

(4) INTEREST.—In determining the amount of the credit under this subsection no interest shall be allowed with respect to the amount ascertained under paragraph (1) or paragraph (2) ; except that if interest is charged by the United States or the agency thereof on account of the disallowance for any period before the date of the payment, repayment, or offset, the credit shall be increased by an amount equal to interest on the amount ascertained under either such paragraph at the same rate and for the period (prior to the date of the payment, repayment, or offset) as interest is so charged.

(c) CREDIT IN LIEU OF OTHER CREDIT OR REFUND.—If a credit is allowed under subsection (b) with respect to a prior taxable year no other credit or refund under the internal revenue laws founded on the application of subsection (a) shall be made on account of the amount allowed with respect to such taxable year. If the amount allowable as a credit under subsection (b) exceeds the amount allowed under such subsection, the excess shall, for the purposes of the internal revenue laws relating to credit or refund of tax, be treated as an overpayment for the prior taxable year which was made at the time the payment, repayment, or offset was made.

[4] The term "excessive profits" is a term of art found in section 3806 and will be discussed hereinafter.

*United States*, 199 F. 2d 607 (C.A. 10, 1952), this method was explained at p. 610, as follows:

The renegotiation did not operate to wipe out any taxes or interest due, nor did it alter the total tax liability. Rather, it merely operated to decrease the amount of excessive profits to be repaid the United States by the amount of taxes previously paid.

However, in the instant case the contracting agency did not allow Overlakes the credit to which it was and is entitled. Our Findings of Fact show that fact.

The facts show that Overlakes refunded $475,612.17 in 1954 and $312,773.85 in 1955, which amounts represent the full amounts of the price adjustments by the contracting officers under both contracts and no offset was calculated under the provisions of section 3806. This tax credit is not lost to petitioner since section 3806 anticipated situations where the tax credit was not allowed or where it was allowed in insufficient amounts. Subsection (c) of section 3806 provides in part as follows:

(c) * * * If the amount allowable as a credit under subsection (b) exceeds the amount allowed under such subsection, the excess shall, for the purposes of the internal revenue laws relating to credit or refund of tax, be treated as an overpayment for the prior taxable year which was made at the time the payment, repayment, or offset was made.

In view of the above, Overlakes is entitled to a tax credit and all of it is to be treated as an overpayment since the "amount allowed" by the contracting agency was zero. Therefore, the correct taxable income of petitioner must be determined and correct tax liability ascertained. When this is known the amount of the allowable tax credit can be computed and the excess of the allowable tax credit over the amount allowed is treated as the overpayment.

We conclude that section 3806, insofar as it is applicable here, relates only to a tax credit and that any overpayments computed thereunder cannot be claimed as a deduction from income. As to this issue, we decide for the respondent.

### *Issue 3*

The next question before us concerns the computation of this tax credit. Respondent contends that the computation of the tax credit is not a matter for the Tax Court but that it can be handled administratively. Apparently, it is respondent's position that we have either (1) no authority to determine the principles applicable to the computation of the tax credit, or (2) that this matter can best be handled by administrative settlement.

Our authority, we think, to make the allocation from which the tax credit can be computed is based on the provisions of sections 3806,

*supra*, and 322(d) of the 1939 Code.[5] Subsection (c) of section 3806 which we have referred to earlier provides that the amount allowable as a credit shall be treated as "an overpayment for the prior taxable year." The latter subsection is set out in the margin and it appears that the present case comes within those provisions.

In view of the foregoing sections, we find proper jurisdiction to redetermine the overpayment of tax applicable to the year in issue, 1952. It is not our intention, however, to mathematically compute the overpayment which can be handled by a Rule 50 computation.

The computation of an allowable tax credit under the provisions of section 3806 first requires a computation of the petitioner's tax for the prior taxable year without reference to section 3806. Secondly, the tax is recomputed by omitting from gross income for the prior taxable year the amounts which have been determined to be "excessive profits" by the contracting agency. The difference between the two computations of tax is the amount of the tax credit to which petitioner is entitled, *Standard Roofing & Material Co.* v. *United States, supra* at 610.

The term "prior taxable year" as it is used in section 3806 is a term of art and has reference to the original year in which "excessive profits" were accrued in income by the contractor. The problem in the instant case results from the fact that contract No. 8375 was a 2-year contract with deliveries made and proceeds accrued in 1951 as well as 1952. In other words, the "prior taxable year" as it is used in section 3806 applies to 1951 as well as 1952 in the instant case.

In view of a concession made by respondent in his brief, there is now no dispute as to the computation of the tax credit under contract No. 2704 so that the only remaining dispute as to the computation of the tax credit concerns contract No. 8375.

With respect to contract No. 8375, it is petitioner's position that it earned no excessive profits under the contract in 1951 so that any allocation of "excessive profits" must be attributed to 1952, the second year of the contract, and none to 1951; in other words, that the entire refund of $475.612.17 made on contract No. 8375 should be attributed to 1952. On the other hand, it is respondent's position that the price redetermination made in 1954 by the contracting agency which, for purposes of section 3806 is deemed to be "excessive profits," is allocable to the years in issue in proportion to the amounts originally accrued

---

[5] SEC. 322. REFUNDS AND CREDITS.

(d) OVERPAYMENT FOUND BY BOARD.—If the Board finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of tax in respect of such taxable year, the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Board has become final, be credited or refunded to the taxpayer. * * *

in income in those years. The problem is illustrated by the following ruling in Rev. Rul. 54–82, 1954–1 C.B. 286 :

(B) The prime contractor had a price redetermination made in 1952 and made refund to the Government agency in 1952. Income under the prime contract was accrued in 1951 and 1952. The prime contractor treated such refund, in 1952, as a reduction of sales for such year. No tax credits have been allowed under section 3806 of the Code since the refunds paid were in the amount of the determination.

    *         *         *         *         *         *         *

With respect to (B), above, since the repayment of excessive profits was made by the prime contractor to the United States Government, the provisions of section 3806 of the Code are applicable to the prime contractor. In the absence of the application of section 3806(a)(4) of the Code to the case, the excessive profits should be properly allocated between 1951 and 1952 in order to comply with the provisions of section 3806(a)(3) of the Code, which reads :

"(3) DEDUCTIONS DISALLOWED.—The amount of payment, repayment, or offset described in paragraph (1) or paragraph (2) shall not constitute a deduction for the year in which paid or incurred."

If the excessive profits have been repaid without the benefit of a tax credit, where such credit is allowable under 3806(b), section 3806(c) of the Code provides in part as follows :

"(c) CREDIT IN LIEU OF OTHER CREDIT OR REFUND.—* * * If the amount allowable as a credit under subsection (b) exceeds the amount allowed under such subsection, the excess shall, for the purposes of the internal revenue laws relating to credit or refund of tax, be treated as an *overpayment* for the prior taxable year *which was made at the time payment, repayment, or offset was made.* [Italics supplied.]"

    *         *         *         *         *         *         *

In the event that excessive profits have been repaid without benefit of a tax credit, where such credit is allowable under section 3806(b) of the Code, the credit shall be treated as an overpayment of tax for the prior taxable year. Such overpayment is considered as made at the time the payment, repayment, or offset was made, for the purpose of computing interest under section 3771(b) of the Code.

Respondent's position is that what was refunded by Overlakes to the contracting agency was that part of the contract price which was reduced. Respondent's allocation, between 1951 and 1952, proceeds from an inquiry which seeks to determine how much of the contract price received in each year was reduced and returned. Respondent takes the position that the purpose of section 3806 is to provide tax relief equal to the tax savings to petitioner that would have resulted had it known at the time it filed its returns what the final prices would be.

Petitioner takes the view that what is being returned is "excessive profits" and that it had none in 1951. It submitted most of its evidence in an effort to prove that it had "excessive profits" as to contract No. 8375 only in 1952, and not in 1951. The purpose of this contention was to provide a basis to argue that all of the refund under contract No. 8375 should be attributed to 1952. We believe that petitioner's

view of "excessive profits" as that term is used in section 3806 is defined too narrowly. As defined in section 3806(a)(1)(B), "excessive profits" includes "any part of the contract price of a contract with the United States" and it is not limited to "profits" alone. We agree with respondent that there was a price revision of the entire contract costs and profits as provided by the Price Revision Article of contract No. 8375 set forth in our Findings of Fact and not merely a revision of profits. We have carefully reviewed that contract and the modifying agreements and have found that there was a sales price revision of costs and profits and not merely a revision of profits alone. "Excessive profits" is broadly defined to include costs and profits.

Of the refund payment of $475,612.17 made on contract No. 8375, we find that respondent's allocation between 1951 and 1952 is reasonable and that petitioner has failed to prove that any other allocation is proper. Except for the mathematical discrepancies in the statutory notice conceded by respondent on brief, we find for respondent. There is no controversy as to the allocation of the refund of $312,773.85 under contract No. 2704 to the respective years 1952 and 1953.

### *Issue 4*

By an amendment to the petition, Overlakes added to paragraph 4 the following:

(c) In determining the net income for the year ended December 31, 1952, the respondent erroneously failed to reduce the reported net income by $103,-524.71, representing amounts expended in 1951 for research and experimental expenses incurred in the development of wire dispenser packages, which should have been capitalized in 1951 as deferred expenses and deducted in 1952.

And to paragraph 5 the following subparagraphs were added to the petition:

(f) In 1951 the petitioner entered into a contract with the Signal Corps Supply Agency for the manufacture of wire dispenser packages, including insulated wire and container, which were designed to permit the laying of wire from a moving vehicle or airplane.

(g) In 1951 the petitioner expended $103,524.71 for materials used in the research and experimentation necessary for the development of the wire dispenser packages.

(h) Because of the difficulty of producing a satisfactory product to meet the requirements of the Signal Corps Supply Agency, no wire dispenser packages were shipped in 1951 and the entire quantity contracted for was produced and shipped in 1952.

(i) The expenses of developing this product which were incurred in 1951 were erroneously deducted by the petitioner in its 1951 income tax return, but should have been capitalized as deferred expenses in that year and deducted in 1952.

Under normal cost accounting procedures the expenses incurred in the production of the 1C wire dispensers would have been deemed incurred and included in cost of goods sold in the year the dispensers were sold and the income therefrom included in income. It is, there-

fore, to be presumed that petitioner's costs were included in inventory and cost of goods sold was deducted in 1952. Petitioner operated under a supply contract and not a research contract. Petitioner's opening inventory for 1952 represents unexpired costs carried forward from the preceding accounting period to be applied against the sales income of the period to which they are carried, to the extent the articles in the inventory are sold in the second period. A larger opening inventory in 1952 would therefore tend to reduce taxable income; cf. *Lela Sullenger*, 11 T.C. 1076 (1948), and *C. C. Humphries*, 17 B.T.A. 811 (1929). If petitioner would increase the cost of goods sold for 1952 by $103,524.71, it must show that it has not previously included this sum in the cost of goods sold. This has not been done. The record does not show any costs of item 1C not taken into account in the cost of goods sold deduction taken by petitioner on its 1952 return. Therefore, petitioner's assignment of error as to this item is not sustained.

Reviewed by the Court.

*Decision will be entered under Rule 50.*