The **OVERLAKES CORPORATION,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 339, Docket 29378.

United States Court of Appeals
Second Circuit.

Argued April 20, 1965.

Decided July 8, 1965.

Elden McFarland, of McFarland, Jacobs, Barry & Latchford, Washington, D. C. (Edwin A. Tennant, Jr., Wagner, Quillinan & Tennant, New York City, of counsel), for petitioner.

Loring W. Post, Attorney, Department of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attorneys, Department of Justice, Washington, D. C., on the brief), for respondent.

Before KAUFMAN, HAYS and ANDERSON, Circuit Judges.

PER CURIAM:

We affirm the decision of the Tax Court. 41 T.C. 503 (1964). The facts of the case are fully set forth in the Tax Court's opinion. The petitioner entered into a defense contract in 1951 with the Army Signal Corps Procurement Agency to supply a number of reels of wire as required. The contract contained a provision for redetermination of price "because of the experimental and developmental nature of the work * * * and the great uncertainty as to the cost of performance." Since petitioner used the accrual method of accounting, the

amounts for which it billed the contracting agency during 1951 and 1952 were accrued as income for each of those years. In 1954 the petitioner and the contracting agency, after a study of "cost and profit factors," agreed upon a contract price redetermination which resulted in a refund of $475,612.17 by the petitioner to the contracting agency which was accomplished by offsetting the refund against amounts owed the petitioner. The Tax Court held that the petitioner, having reported as income during 1951 and 1952 the $475,612.17 which it refunded in 1954, is entitled under Section 3806(c) of the Internal Revenue Code of 1939 [1] to a credit for overpayment of taxes for each of those prior taxable years. The only issue here is the method of allocating the $475,612.17 refund between the taxable years 1951 and 1952. The Tax Court upheld as reasonable the Commissioner's method of allocation "in proportion to the amounts originally accrued in income in those years." 41 T.C. at 519–520.

We agree with the Tax Court in finding the Commissioner's allocation reasonable. As provided in the contract and in the price modification agreement, what was being redetermined was the total price, including "cost and profit factors," rather than profits alone as contended by the petitioner.[2]

Affirmed.

ANDERSON, Circuit Judge (dissenting):

The majority seems completely bemused by the words "contract price redetermination" which they treat as something quite distinct from and wholly unconnected with a finding of excessive profits. They accept the Commissioner's thesis that the parties to the contract made an across the board reduction in unit sales prices and, on evidence which is dubious at best, the Tax Court so found. But whatever the post-performance negotiations and agreement may be called, it was a renegotiation to determine excessive profits as defined in § 3806(a) (1) (A). The so-called contract price redetermination was not an end in itself but was a means of determining such excessive profit. Any profit over what was normally allowable, here 8.91%, was agreed to be excessive profit. For the purpose of taxation all of the profit was subject to income tax *for the year in which the profit was made*. The taxes were paid on that basis for each of the years of the contract, 1951 and 1952. There were no profits in excess of 8.91% in 1951, and therefore no income tax was paid on any excess profits in that year; but there were excessive profits in 1952 in the amount of $475,612.17, which was a part of the income taxed for 1952. As soon as the excessive profit in 1952 was determined, § 3806(c) became operative. Calling it an "overpayment" simply describes a means of crediting the tax refund due and in no way alters the fact that it resulted from a renegotiation for determination of excessive profits and the repayment of the same. The purpose of § 3806 is to give petitioner a credit equal to the taxes paid on the excessive profits it refunded to the Government.

"Section 3806 of the Internal Revenue Code provides, in general, that

**1.** Added by ch. 619, 56 Stat. 966 (1942).

**2.** Subsequent to oral argument the Commissioner informed the court and counsel for petitioner of the decision of the Eighth Circuit in McDonnell Aircraft Corp. v. United States, 342 F.2d 943 (1965). That case concerned "the usual complicated fact situation attendant upon an excess profits tax case * * * [which was] triggered by [the taxpayer's] statutorily permitted change of accounting for its long-term contract income." Id. at 946. Also involved in the case was the interpretation of the Renegotiation Acts of 1948 and 1951, as well as § 3806 of the Internal Revenue Code of 1939. The instant case is distinguishable because (1) the contractual price redetermination herein was not brought about by renegotiation of "excessive profits" under the Renegotiation Acts as in McDonnell, and (2) the petitioner herein has not obtained permission for a change of its accounting method as was done by the taxpayer in McDonnell. We also note that the Eighth Circuit itself distinguished the instant case. Id. at 950.

the amount of excessive profits to be eliminated shall be credited by the amount of Federal income and excess profits taxes paid with respect to such excessive profits." U.S.Code Cong. and Admin.News Service, 1951, p. 1362.

By allocating the credit in proportion to the amounts originally accrued in income in each of the years 1951 and 1952, as if it had nothing to do with the taxes in those years, the Commissioner reduced the petitioner's tax credit under § 3806 by many thousands of dollars. Although the Commissioner would not allow a taxpayer to spread profits over the two years of the contract to reduce its taxes, he has in this case shifted a substantial portion of petitioner's excessive profits from the year of accrual, 1952, to 1951, in order to reduce the credit available under § 3806. There is nothing to show that Congress ever intended or authorized such treatment, and it is arbitrary and unfair.

McDonnell Aircraft Corp. v. United States, 342 F.2d 943 (8th Cir.1965), while distinguishable on the facts, recognized that

"* * * the statute [§ 3806] speaks in terms of the taxable year and an amount of excessive profits 'for a taxable year'; that the contract price for that year is reduced by the amount eliminated; and that the amount eliminated and repayable is credited with the decrease in tax for the year.

"Thus * * * § 3806 * * * emphasize[s] the year as a unit and give[s] no emphasis to a particular contract or contracts as the measure either of renegotiation, of tax credit or of tax computation" (at p. 948).

The McDonnell case's interpretation and application of § 3806 is, in that regard, authority for this case. For the majority here to hold that there is not a renegotiation to determine excessive profits, as "renegotiation" is defined in § 3806(a) (1) (A), whenever the parties have engaged in a discussion and determination of "total price, including 'cost and profit factors'" instead of just profits, injects unnecessary complexities and distinctions into the application of § 3806 and brings about the unfair result which is manifest here. In addition, contrary to accepted policy, it penalizes any contractor who sits down and discusses the factors involved, including cost and profit, and reaches an amicable agreement with the Government agency. It is also somewhat unclear just how the contracting parties can ever renegotiate for a determination of excessive profits without considering or discussing "total price" and "cost * * * factors." But hereafter the taxpayer will do so at his peril.