SUNDSTRAND CORPORATION AND CONSOLIDATED SUBSIDIARIES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sunstrand Corp. & Consol. Subsidiaries
Docket Nos. 27220-89, 1875-91[1]
United States Tax Court
T.C. Memo 1992-659; 1992 Tax Ct. Memo LEXIS 697; 64 T.C.M. (CCH) 1305; November 10, 1992, Filed *697 For Petitioners: John C. Klotsche, Bertrand M. Harding, Jr., Robert H. Albaral, James M. O'Brien, Mark A. Oates, and Neil D. Traubenberg. For Respondent: Reid M. Huey, Joseph P. Grant, and Sherri L. Feuer. HAMBLEN
HAMBLEN
SUPPLEMENTAL MEMORANDUM OPINION HAMBLEN, Chief Judge: This matter is before the Court on petitioners' motion under Rule 161 seeking reconsideration of our Opinion in Sundstrand Corp. v. Commissioner, 98 T.C. 518 (1992) (hereinafter sometimes referred to as our Opinion). Also before the Court is respondent's motion under Rule 52 asking the Court to strike grounds two and four of petitioners' motion for reconsideration. Unless otherwise indicated all Rule references are to the Tax Court Rules of Practice and Procedure and all section references are to the Internal Revenue Code in effect for the years in issue. To the extent necessary for the disposition of these matters the facts and holdings in our Opinion are incorporated herein by this reference. Background
For many years petitioners Sundstrand Corporation (Sundstrand) and Sundstrand Data Control (SDC) (collectively referred to hereinafter as petitioners) have served *698 as prime contractors or subcontractors on various defense contracts. These defense contracts are subject to certain regulatory requirements, including the Cost Accounting Standards (CAS) [2] and the Truth-in-Negotiations Act (TINA). [3] In 1988, following grand jury investigations, petitioners entered guilty pleas to bills of information charging various criminal activities associated with some of these defense contracts, including some activities relating to violations or noncompliance with CAS and TINA. Pursuant to its plea agreement and related settlement agreement, Sundstrand, among other things, agreed to pay the Government $ 115 million in restitution, damages, penalties, fines, and costs. Pursuant to its plea agreement and certain related settlement agreements, SDC, among other things, agreed to pay the Government $ 500,000 as a criminal fine, $ 11.3 million, plus interest, in full administrative settlement of certain contractual claims by the Government, and $ 520,000 for statutory and common-law relief and reimbursement of the costs of the grand jury investigation. Additionally, pursuant to another settlement agreement, Sundstrand agreed to pay the Government $ 62.3 million *699 and $ 1.9 million for alleged noncriminal CAS compliance issues and further agreed not to charge to any Government contract $ 7.1 million of controverted costs. Similarly, pursuant to other settlement agreements, SDC agreed to pay the Government $ 1.3 million and $ 370,000 for various noncriminal CAS compliance issues. In the petitions filed in the instant cases petitioners claimed *700 the above payments were made pursuant to renegotiations of Government contracts and, thus, came under the provisions of section 1481. Petitioners alleged in the petitions that if section 1481 treatment is allowed for these payments petitioners are due refunds for the years in suit in the following amounts: Year
Overpayment claimed
1979
$    114,540
1980
9,506,909
1981
17,043,706
1982
1,288,025
By motions for partial summary judgment, respondent argued that section 1481 does not apply to the payments in issue. In our Opinion we agreed with respondent and held that the payments did not arise from the recovery of excessive profits through a renegotiation of a Government contract within the meaning of section 1481. Sundstrand Corp. v. Commissioner, supra at 551. On June 3, 1992, petitioners filed a motion for reconsideration and a memorandum in support of the motion. In their motion for reconsideration petitioners set forth four grounds in support of their contention that our Opinion is in error: (1) Respondent conceded that "excessive profits" were repaid by petitioners and the actual amount of excessive profits raised a genuine *701 issue of material fact and, as a result, the parties did not brief the issue decided by the Court in granting respondent's motions for partial summary judgment; (2) the Court did not address legislation involving contract price adjustments and repayments of "excessive profits" beginning with the Vinson-Trammell Act in 1934 and continuing up through today under the 1982 Defense Authorization Act and, as a result, the Court de facto repealed section 1481 as of 1976; (3) our Opinion effectively overruled Portland Copper & Tank Works, Inc. v. Commissioner, 43 T.C. 182 (1964), affd. per curiam 351 F.2d 460 (1st Cir. 1965), and Overlakes Corp. v. Commissioner, 41 T.C. 503 (1964), affd. per curiam 348 F.2d 462 (2d Cir. 1965); and (4) our Opinion is in conflict with respondent's practice of administering section 1481, which has applied that provision to contract price adjustments with respect to contracts between a taxpayer and any agency of the Government. On July 7, 1992, respondent filed a motion to strike grounds two and four of petitioners' motion for reconsideration and *702 a memorandum in support of the motion to strike. Respondent filed a response to petitioners' motion for reconsideration and memorandum in support of the response on July 20, 1992. On August 19, 1992, petitioners filed their response to respondent's motion to strike. Also on that date petitioners filed their reply to respondent's response to petitioners' motion for reconsideration. Discussion
The granting of a motion for reconsideration rests within the discretion of the Court. Vaughn v. Commissioner, 87 T.C. 164, 166-167 (1986). The Court generally denies reconsideration of proceedings already concluded unless unusual circumstances or substantial error are shown. Estate of Halas v. Commissioner, 94 T.C. 570, 574 (1990); Vaughn v. Commissioner, supra.For the reasons set forth below we deny petitioners' motion for reconsideration. Petitioners first contend that in footnote 8 in respondent's memoranda in support of respondent's motions for partial summary judgment respondent conceded for purposes of the motions that at least some portion of the payments were "excessive profits" *703 within the meaning of section 1481 and there remained a genuine issue of fact as to the amount of those excessive profits. Petitioners claim that as a result of this alleged concession, they did not brief the issue decided in our Opinion granting respondent's motions for partial summary judgment. Respondent, in effect, responds that petitioners have misconstrued her statement and that, taking respondent's memoranda as a whole, it is apparent that respondent did not concede that any portion of petitioners' payments constituted excessive profits. We are satisfied from our examination of respondent's memoranda as a whole that no such concession occurred. Moreover, even had respondent stipulated that the payments were excessive profits within the meaning of section 1481, as a conclusion of law, such a concession would not bind this Court. See Godlewski v. Commissioner, 90 T.C. 200, 203 n.5 (1988); Sivils v. Commissioner, 86 T.C. 79, 82 (1986); Barnette v. Commissioner, T.C. Memo. 1992-595. Petitioners also contend that in our Opinion the Court effectively limited the application of section *704 1481 to renegotiations brought about by contract disputes arising out of the Korean conflict and World War II and, thus, the Court de facto repealed section 1481 for tax years before Congress repealed the statute. Petitioners misconstrue our Opinion. Our focus was not solely on the term "excessive profits" but on the entire concept of a renegotiation of excessive profits within the meaning of section 1481. Our purpose in looking to legislative history in the Opinion was to try to ascertain Congress' intent in enacting the statute. Based on all of our research we concluded that Congress intended section 1481 to apply to renegotiations of Government contracts where abnormally high profits arose from the operations of the defense contractor generally because rapid mobilization or the development of complex or innovative equipment made it difficult for the contracting parties to determine initially a fair and reasonable contract price. We further concluded that price redeterminations under CAS and TINA, on the other hand, emanate from different sources and that section 1481 did not apply to repayments arising from CAS or TINA violations. Nothing in petitioners' memorandum in support *705 of their motion for reconsideration has convinced us otherwise. Petitioners further contend that our Opinion effectively overruled Portland Copper & Tank Works, Inc. v. Commissioner, 43 T.C. 182 (1964), and Overlakes Corp. v. Commissioner, 41 T.C. 503 (1964). We do not agree. Neither Portland Copper & Tank Works, Inc. v. Commissioner, supra, or Overlakes Corp. v. Commissioner, supra, involve violations of TINA or CAS. We considered those cases but found them to be factually distinguishable and not germane to the issues under consideration in respondent's motions for partial summary judgment. Petitioners have not convinced us otherwise in their memorandum in support of their motion for reconsideration. Finally, petitioners argue that our Opinion is in conflict with respondent's practice of administering section 1481. Petitioners rely specifically on Rev. Rul. 53, 1953-1 C.B. 479; Rev. Rul. 71-185, 1971-1 C.B. 267; and Priv. Ltr. Rul. 65121657020A (Dec. 16, 1965). *706 Respondent's rulings do not have the force of law and are merely statements of respondent's position with respect to a specific factual situation. Sec. 6110(j)(3) (private letter rulings may not be used or cited as precedent); Dixon v. United States, 381 U.S. 68, 73 (1965); Frontier Savings Association v. Commissioner, 87 T.C. 665, 678 (1986), affd. sub nom. Colonial Sav. Association v. Commissioner, 854 F.2d 1001 (7th Cir. 1988). Moreover, none of the rulings on which petitioners rely pertain to CAS or TINA violations. We found them factually distinguishable from the instant case. Cf. Strong v. Commissioner, 91 T.C. 627, 637 n.16 (1988). Petitioners have failed to establish otherwise in thier memorandum in support of their motion for reconsideration. We have considered the additional arguments raised in petitioners' motion for reconsideration, memorandum in support of their motion for reconsideration, and reply to respondent's response to petitioners' motion for reconsideration but find them unpersuasive. Accordingly, petitioners' motion for reconsideration *707 is denied. In addition, respondent's motion to strike is denied as moot. An appropriate order will be issued. Footnotes
1. These cases have been consolidated for purposes of trial, briefing, and opinion.↩
2. Promulgated by the Cost Accounting Standards Board (CASB) pursuant to the mandate of the Defense Production Act Amendments, Pub. L. 91-379, sec. 103, 84 Stat. 796 (1970) (but see sec. 5 of the Office of Federal Procurement Policy Act Amendments of 1988, Pub. L. 100-679, 102 Stat. 4058, which created a new, independent CASB within the Office of Federal Procurement Policy). ↩
3. Sometimes referred to as the defective pricing statute, added by Pub. L. 87-653, 76 Stat. 528, 10 U.S.C. sec. 2306(f) (1962) (now at 10 U.S.C. sec. 2306a (1988)↩ (cost or pricing data: truth in negotiating)).